# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE DAVID R.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 5:19-CV-02050-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Bruce David R. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("Defendant," "Commissioner," or "Administration") denying his application under Title II of the Social Security Act. (Compl., ECF No. 1.) Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 12–13.) For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## I. SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On July 8, 2016, Plaintiff filed an application under Title II for a period of disability and disability insurance benefits, alleging disability beginning on April 1, 1992. (Administrative Record ("AR") 115–23.) The Commissioner denied the application on August 8, 2016. (AR 73–76.) On September 20, 2016, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 77.) ALJ Salena D. Bowman-Davis conducted a hearing on August 28, 2018, where Plaintiff appeared without counsel. (AR 39–57.)

In a decision issued on October 10, 2018, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 8–18.) At step one, the ALJ stated that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 1, 1992, through December 31, 2000, his date last insured. (AR 13.) At step two, the ALJ found that through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (AR 13.) Thus, the ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, at any time from April 1, 1992 through December 31, 2000. (AR 14.)

Plaintiff requested review with the Appeals Council on December 13, 2018. (AR 108–09.) The Appeals Council denied the request for review on September 5, 2019. (AR 1–5.) Thus, the ALJ's decision became the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). This Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

## III. DISCUSSION

The single disputed issue is whether the ALJ properly assessed evidence of Plaintiff's loss of vision and properly found at step two that it was not a severe impairment. (Joint Stip. 3, ECF No. 21.) Plaintiff contends that the ALJ failed to properly assess his visual impairments because she failed to properly evaluate his disability onset date, erroneously rejected the records and opinions of his treating physicians, improperly disregarded his testimony, and failed to fully and fairly develop the administrative record. (*Id.* at 3–11.) Defendant argues that the ALJ was correct in finding that Plaintiff did not prove disability prior to 2000, the date last insured. (*Id.* at 11–18.) For the reasons stated below, the Court finds that reversal and remand is appropriate.

///
///
///
///

### A. Legal Standards

#### 1. Step Two Determination

"[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."). At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe" or "not severe." *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). In other words, an impairment is not severe "when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). A finding of non-severity at step two must be "clearly established by medical evidence." *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). If a claimant meets her evidentiary burden under step two's de minimis standard, an ALJ "*must* find that the impairment is 'severe' and move to the next step" in the five-step evaluation. *See Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001).

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) nonexamining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). A treating physician's medical opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Trevizo*, 871 F.3d at 675.  The weight given to a non-treating physician's opinion depends on the length and frequency of examination, the nature and extent of the treatment relationship, the evidentiary support for the opinion, consistency with the record, and the physician's specialty, among other factors.  20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)–(6).

The ALJ is obligated to evaluate all medical opinions of record, resolve conflicts in medical testimony, and analyze evidence.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes*, 881 F.2d at 751).

In rejecting a medical opinion, the ALJ must do more than state conclusions; the ALJ must set forth his or her interpretations and explain why those interpretations, rather than the doctor's, are correct.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  But the ALJ need not give weight to conclusory opinions inadequately supported by clinical findings.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

///

///

| | |
|---|---|
| 1 | 2.  ALJ's Duty to Develop Record |

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). The ALJ has a special duty in social security cases to "fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288 (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)). "This duty extends to the represented as well as to the unrepresented claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts." *Id.*. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." *Tonapetyan*, 242 F.3d at 1150.

**B.  Background**

The medical record contained evidence of Plaintiff's visual impairments from two treating physicians. First, the record included a one-page handwritten note by Dr. A.Z. Mazer, with a "Date[] of Observation" of September 4, 1990. (AR 180.) The note stated that Plaintiff wanted a referral to a low-vision specialist, that Plaintiff had "aniridia since birth," that he had 20/200 vision in both eyes, and that "[n]o glasses have helped." (AR 180.) Under this section, Dr. Mazer included the following notes: "lids 0," "conj 0," "cornea clear," "aniridia OU," "lens," a drawing of two eyes, "central nuclear cataracts OU," "fundi mac hypoplasia OU," "+ nystagmus," "+ RHT." (AR 180.) At the bottom of the page, Dr. Mazer noted

that Plaintiff "needs low visions aids" and "plan: will refer to LL for low vision." (AR 180.)  The record also included a January 15, 1991 letter from Optometric Center of Fullerton to Riverside Medical Clinic, which stated:  "Your patient, [Plaintiff], was seen in this center for a low vision evaluation on October 10 and 17, 1990, by referral from Dr. Anne Mazer.  The fee for this service is $90."  (AR 191.)

Second, the record included a statement from Dr. Clinton Wong, dated June 27, 2016, which stated:  "We had the opportunity to provide optometric care for [Plaintiff] on September 11, 2015.  He is legally blind based upon poor visual acuities (from aniridia) and the presence of cataracts.  Best corrected vision is 20/400."  (AR 178.)

At the August 28, 2018 hearing, Plaintiff provided the following testimony.  Plaintiff testified that he was tested as a child (AR 47); that he "had to go back twice" to Dr. Mazer—once for "all kinds of tests" and then "my diet chart and different things"—and that Dr. Mazer "looked into [his] eyes with all her stuff, and she tried to fit [him] with various glasses and binoculars and all that type of stuff" (AR 48–49); that the low vision specialist told him there was nothing they could do to help him and that removing his cataracts would hurt his vision (AR 44, 49); and that Plaintiff did not go to any doctor after 1990 until Dr. Wong because he was told nothing could be done to help him (AR 49).

Plaintiff testified that he previously worked as a merchandiser, and described the experience as follows:  "It was a—it was really difficult because everything was so small, that labels, and we got—I would get the packet when I got to the store, if I can get to the store.  Most of the work had to be done at night.  Transportation was an issue, but it is mainly seeing it, and as my eyes got worse—I have cataracts, and bright light bothers my eyes."  (AR 47.)  Plaintiff testified that he worked a little after 1990, but stopped in 1992 because it was really difficult, he could not see well enough to work, his vision got worse, and he could not drive or carry the materials he needed to do his work.  (AR 47, 53.)

At the August 28, 2018 hearing, the ALJ stated that "there's no question that you have an impairment and a simple impairment—I mean a severe impairment, but the—the documentation needed to support the claim, it's, you know, not sufficient." (AR 48.)  The ALJ noted that there was "insufficient information" regarding the low-vision specialist (AR 45), that "obviously" tests must have been conducted (AR 46), and that the records did not include any test records by the low-vision specialist or Dr. Mazer (AR 44–46).  The ALJ stated that she would request copies of Plaintiff's tests because "there must have been some."  (AR 51.)

The record contains an August 29, 2018 letter from the Administration to Dr. Mazer requesting all of Plaintiff's medical records from January 1, 1990 to December 31, 1991.  (AR 194–96.)  Riverside Medical Clinic responded by letter dated September 5, 2018, stating that they were unable to fulfill the Administration's request because Plaintiff's records were destroyed.  (AR 193.)

In the written decision, the ALJ noted that the record contained only a single page of medical records predating Plaintiff's last date insured:  Dr. Mazer's note. (AR 14.)  The ALJ concluded that Dr. Mazer's note was insufficient to establish that Plaintiff was disabled prior to the date last insured for three reasons:  (1) there was no indication whether the information was self-reported or obtained through objective testing by Dr. Mazer; (2) there was no indication in the record whether Plaintiff ever saw the low vision specialist to whom he was referred; and (3) there was no indication whether Plaintiff's corrected vision was disabling at the time of his alleged onset of disability, more than eighteen months after the note was written. (AR 14.)  The ALJ gave Dr. Wong's statement no weight because it did "not relate to the period under review."  (AR 14.)

### C. Analysis

Given the de minimis standard applied at step two and its purpose to screen out groundless claims, and the ALJ's heightened duty to develop the record when a

claimant is unrepresented, the Court finds that the ALJ's rejection of Plaintiff's claim at step two was not supported by substantial evidence.

The medical evidence presented by Plaintiff does not support the conclusion that Plaintiff possessed a non-severe impairment unlikely to impact his ability to work. *See Webb*, 433 F.3d at 687. Dr. Mazer noted that Plaintiff had 20/200 vision in both eyes, aniridia in both eyes, cataracts in both eyes, and hypoplasia in both eyes, and nystagmus, and Dr. Wong stated that Plaintiff was legally blind based upon poor visual acuities (from aniridia) and the presence of cataracts, and that his best corrected vision was 20/400. (*See* AR 178, 180.) Although this medical evidence does not necessarily mean that Plaintiff would "succeed in proving that he is disabled," it demonstrates that Plaintiff's claim was not "groundless" and the ALJ's sequential analysis should have continued beyond the de minimis threshold of step two. *See Webb*, 433 F.3d at 688.

The ALJ discounted Dr. Mazer's medical evidence for three reasons and gave no weight to Dr. Wong's opinion for one reason. (AR 14.) But before rejecting the opinions of Dr. Mazer and Dr. Wong—treating physicians whose opinions were not controverted—the ALJ was required to articulate "clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan*, 528 F.3d at 1198). As discussed below, the ALJ's reasons were not legally sufficient, particularly in light of the demanding legal standard for rejecting the opinion of treating physicians and an ALJ's heightened duty to fully develop the record where a claimant is unrepresented.

First, the ALJ stated that there was no indication regarding whether the information in Dr. Mazer's notes was self-reported by Plaintiff or obtained through objective testing by Dr. Mazer. (AR 14.) The Court strains to understand the basis for the ALJ's assumption that Dr. Mazer's notes were based on self-reported information from Plaintiff. *See, e.g., Hudson v. Saul*, No. 19-cv-00337-RMI, 2020 U.S. Dist. LEXIS 91628, at *15 (N.D. Cal. May 26, 2020) (stating that ALJ should

not have made the "unwarranted assumption" that doctors simply relied on Plaintiff's self-reported symptoms alone in rendering their diagnoses). Indeed, Dr. Mazer's notes appear to indicate that she examined Plaintiff—most tellingly, Dr. Mazer's diagram of Plaintiff's eyes and the various notes surrounding such diagram, including "cornea clear." (*See* AR 180.) Given what at best could be characterized as ambiguous evidence, the ALJ's duty to develop the record was triggered. *See Mayes,* 276 F.3d at 459–60. Indeed, the Ninth Circuit has stated that "[i]f the ALJ thought [s]he needed to know the basis of [a doctor's] opinions in order to evaluate them, [s]he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them." *Smolen*, 80 F.3d at 1288.

Second, the ALJ stated that there was no indication in the record that Plaintiff ever saw the low vision specialist to whom he was referred by Dr. Mazer. (AR 14.) This statement is belied by the January 15, 1991 letter letter from Optometric Center of Fullerton to Riverside Medical Clinic, which confirmed that Plaintiff was seen for a low vision evaluation on October 10 and 17, 1990, by referral from Dr. Mazer. (AR 191.) If anything, this highlights that the record was incomplete, which again triggered the ALJ's duty to develop the record. *See Mayes,* 276 F.3d at 459–60.

Third, the ALJ discounted Dr. Mazer's opinion because "there [was] no indication in the record . . . whether [Plaintiff's] corrected vision was disabling at the time of his alleged onset of disability, more than eighteen months after this single note was written." (AR 14.) This finding overlooks Dr. Mazer's notes that Plaintiff has had "aniridia since birth," that he had 20/200 vision in both eyes, and that "[n]o glasses have helped"—in other words, that Plaintiff had a chronic vision impairment for which corrective lenses have not helped. (AR 180.) In addition, without a clear and convincing reason for discounting Plaintiff's testimony—or any discussion of Plaintiff's testimony at all—the ALJ's third reason ignores Plaintiff's testimony that

he worked a little after 1990, but stopped in 1992 because it was really difficult, he could not see well enough to work, his vision got worse, and he could not drive or carry the materials he needed to do his work. (AR 47, 53.) *See Smolen*, 80 F.3d at 1290 (stating that at step two, the ALJ "is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity"); *see Webb*, 433 F.3d at 687 ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.") (quoting *Reddick*, 157 F.3d at 722)).

While the Ninth Circuit has held that "[m]edical opinions that predate the alleged onset of disability are of limited relevance," it also has clarified that such limited relevance is particularly true "where disability is allegedly caused by a discrete event." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). Furthermore, the Ninth Circuit has held that "[t]he ALJ must consider *all* medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (emphasis added) (citing 20 C.F.R. § 404.1527(b)). In an unpublished opinion, the Ninth Circuit applied this rule to include medical evidence that predates the alleged onset date of disability. *See Williams v. Astrue*, 493 F. App'x 866, 868 (9th Cir. 2012) (concluding that ALJ erred in failing to consider medical opinions from up to six years predating plaintiff's alleged onset date). "Thus, while the date of the opinion may be one factor the ALJ can consider in giving an opinion more or less weight, a medical opinion is not insignificant or not probative merely because it is rendered prior to an alleged onset date, particularly in cases where the claimant suffers from an ongoing impairment." *Henderson v. Comm'r, SSA*, No. 6:17-cv-00481-HZ, 2018 U.S. Dist. LEXIS 76626, at *26 (D. Or. May 4, 2018).

Furthermore, Plaintiff contends that the ALJ should have assessed his disability onset date as September 4, 1990—the date of Dr. Mazer's note—in which case Dr. Mazer's medical evidence would not predate Plaintiff's disability onset date and could not be discounted for this reason. (*See* Joint Stip. 3–11.) Defendant does

not brief this issue, so it could be considered waived. (*See generally id.* at 11–19.) *See Aramark Facility Servs. v. SEIU, Local 1877*, 530 F.3d 817, 824 n.2 (9th Cir. 2008) (concluding that the failure to adequately brief arguments waives them). As the Court remands this case on other grounds, it is not necessary to address this argument. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

Fourth, the ALJ gave no weight to Dr. Wong's statement because it "did not provide any statement or evidence relating to the claimant's impairment prior to the date last insured." (AR 14.) However, the Ninth Circuit "has specifically held that 'medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" *Lester*, 81 F.3d at 832 (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)); *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011). If Dr. Mazer's evidence was credited, viewed in the context of the record as a whole, the evidence from Dr. Wong potentially could indicate the continuation of chronic vision loss and symptoms that predated the date last insured. *See Svaldi v. Berryhill*, 720 F. App'x 342, 343–44 (9th Cir. 2017) (concluding that weight of treating physician's opinions were not undercut because they were issued significantly after date last insured where the opinions referred back to same chronic condition and symptoms before date last insured).

In sum, the ALJ's conclusion at step two that Plaintiff did not have a severe visual impairment was not clearly established by the medical evidence. The record contained ambiguity and—as stated by the ALJ repeatedly at the hearing (AR 44–48)—was incomplete, thus triggering the ALJ's duty to fully develop the record.

*See Mayes,* 276 F.3d at 459–60. This duty was heightened because Plaintiff was not represented. *See Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992) ("[W]here the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."). The record in this case was inadequate to support a cursory rejection of Plaintiff's claim at a preliminary stage of the analysis.

The error was not harmless. An error is harmless if "it is inconsequential to the ultimate nondisability determination," or "so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citations and quotation marks omitted). Here, if the ALJ had more fully developed the record and credited Plaintiff's treating physicians' records, she reasonably could have determined that Plaintiff suffered from a severe physical impairment and reached a different disability determination. Thus, the Court is unable to conclude that the ALJ's errors were clearly harmless. Consequently, reversal is warranted. *See Marsh v. Colvin*, 792 F.3d 1170, 1172–74 (9th Cir. 2015) (reversing finding of harmless error where reviewing court could not confidently conclude that ALJ's failure to mention or provide specific and legitimate reasons supported by substantial evidence for rejecting treating physicians' medical opinions and records was harmless).

### D. Remand for Further Proceedings

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts

and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Although the Court has found legal error as discussed above, the record on the whole is not fully developed, and essential factual issues remain outstanding. The discounted evidence of Plaintiff's visual impairments raises factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 ("Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate."); *Strauss v. Comm'r of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (holding same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## V. ORDER

The Court ORDERS that judgment be entered reversing the decision of the Commissioner and remanding this mater for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: December 17, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE